UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | | |
|---|---|---|---|
| DANNY RAMSEY, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| v. | ) | No: | 2:12-cv-250-JMS-WGH |
| | ) | | |
| SUPERINTENDENT, | ) | | |
| Wabash Valley Correctional Facility, | ) | | |
| | ) | | |
| Respondent. | ) | | |

**Entry Discussing Petition for Writ of Habeas
Corpus and Denying Certificate of Appealability**

For the reasons explained in this Entry, the petition of Danny Ramsey for a writ of habeas corpus must be **denied** and the action dismissed with prejudice. In addition, the court finds that a certificate of appealability should not issue.

**The Petition for Writ of Habeas Corpus**

**I. Applicable Law**

A federal court may issue a writ of habeas corpus on behalf of a state prisoner only if it finds the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241(c)(3), *et seq.,* govern this case because Ramsey filed his petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

> Recognizing that state courts are no less experienced than federal courts in dealing with claims of ineffective assistance of counsel, *Burt v. Titlow,* 571 U.S. – ––, 134 S. Ct. 10, 15–16, 187 L.Ed.2d 348, 2013 WL 5904117 at *4 (U.S. Nov. 5, 2013), federal law erects a high deferential standard . . . for claims that a state court erred. Federal habeas relief is available only if the state court's decision

"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013).

*Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013). As to claims which the state courts have decided on the merits, the AEDPA bars relitigation of the claims except in the foregoing three circumstances. The decision made by a state court is deemed to be contrary to clearly established federal law "'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Emerson v. Shaw,* 575 F.3d 680, 684 (7th Cir. 2009)(quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). The decision by a state court may also be deemed to involve an unreasonable application of clearly established federal law "'if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case.'" *Emerson,* 575 F.3d at 684 (quoting *Bell,* 535 U.S. at 694). "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey,* 735 F.3d 949-50.

"Under § 2254(d)(2), a decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger,* 604 F.3d 394, 399–400 (7th Cir. 2010) (citing *Ward v. Sternes,* 334 F.3d 696 (7th Cir. 2003)).

> A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir. 1998). A petitioner's challenge to a state court decision based on a factual determination under § 2254(d)(2) will not succeed unless the state court committed an "unreasonable error," and § 2254(e) (1)

provides the mechanism for proving unreasonableness. *See Ward v. Sternes,* 334 F.3d 696, 703–04 (7th Cir. 2003).

*Lee v. Zatecky*, 1:12-CV-451-JMS-DML, 2013 WL 3936216 *3 (S.D. Ind. July 30, 2013).

As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *see also Miller–El v. Cockrell,* 537 U.S. 322, 337 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners."). "The petitioner carries the burden of proof." *Cullen v. Pinholster,* 131 S. Ct. 1388, 1398 (2011). "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

In addition to the foregoing substantive standards, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992), *cert. denied,* 508 U.S. 962 (1993). When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.,* the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner v.*

*McBride,* 375 F.3d 643, 648 (7th Cir. 2004) (internal citations omitted).

## II. Background

Ramsey was convicted in an Indiana state court of dealing in methamphetamine, possession of a narcotic drug while in a possession of a firearm, maintaining a common nuisance and possession of marijuana. Ramsey's convictions were affirmed on direct appeal in *Ramsey v. State*, 854 N.E.2d 491 (Ind.Ct.App. Sept. 1, 2006)("*Ramsey I*"). The Indiana Supreme Court denied Ramsey's petition for transfer on November 2, 2006. At post-conviction, the trial court dismissed the habitual offender enhancement, but otherwise denied Ramsey's petition for post-conviction relief. The trial court's partial denial of post-conviction relief was affirmed on appeal in *Ramsey v. State*, 14A01-1102-PC-84 (Ind.Ct.App. Feb. 24, 2012)("*Ramsey II*"). The Indiana Supreme Court denied Ramsey's petition for transfer on May 24, 2012.

The following underlying facts were set forth by the Indiana Court of Appeals in *Ramsey I* and are presumed to be correct because they have not been rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1):

> Between January and May 2002, Penny Drake knew Ramsey through her then-boyfriend. Drake had been to Ramsey's apartment in Washington and had seen a large amount of methamphetamine openly displayed there. Drake contacted the Daviess County Sheriff's Department and informed the Department that Ramsey was dealing methamphetamine and other illegal drugs. Detective Ron Morgan instructed Drake to continue her normal activities and to arrange a purchase from Ramsey.
>
> On May 1, 2002, Drake arranged a buy with Ramsey. Before purchasing the methamphetamine, Detective Morgan searched Drake and her residence to ensure that no illegal drugs were present. Detective Morgan found no drugs or other people inside Drake's residence, and he maintained visual surveillance of the house in order to ensure that no one other than Drake and Ramsey were inside. Detective Morgan also placed a transmitter inside the house to hear the conversation between Ramsey and Drake, but he did not record the conversation. After Drake met with Ramsey in her house, she gave Detective Morgan 3.01 grams of methamphetamine that she had just purchased from Ramsey. Drake and

Detective Morgan followed similar procedures in making several more buys from Ramsey throughout May 2002. These later conversations were recorded.

During late 2003 and early 2004, Molly Haag often visited Ramsey's residence, and she saw illegal drugs there every time that she visited. On February 18, 2004, Haag drove Ramsey to obtain a handgun that she later observed in a room of Ramsey's home.

The Indiana State Police began a separate investigation of Ramsey after obtaining information from a confidential informant about Ramsey's drug dealing activities. On February 18, 2004, the Indiana State Police executed a search warrant at Ramsey's residence. The police found Ramsey in the home as well as plant material, rolling paper, and cocaine. Ramsey had $1,760.21 on his person. In an upstairs bedroom, the police recovered a baggie corner, which is commonly used for packaging illegal drugs for sale, marijuana cigarettes, foil, and a light bulb. The police also found a handgun, two digital scales, 59.29 grams of methamphetamine under the sink floorboard, 8.12 grams of marijuana, and 82 grams of methamphetamine inside a jacket that Ramsey admitted was his.

On February 20, 2004, the State charged Ramsey with dealing in methamphetamine, possession of a narcotic drug while in possession of a firearm, maintaining a common nuisance, possession of marijuana, and being a habitual offender; all of the charges were based on the evidence obtained from the 2004 arrest. On April 26, 2004, the State charged Ramsey with eight counts of dealing methamphetamine based on evidence obtained from Drake in 2002. On May 17, 2005, Ramsey moved for and was granted the consolidation of the two cases for trial, and the State dismissed a possession of paraphernalia count.

*Ramsey I*, 853 N.E.2d at 495-96.

### III. Discussion

Ramsey raises six claims in his petition for writ of habeas corpus: 1) the prosecutor committed misconduct where a State's witness referred to Ramsey being a suspect in a federal drug conspiracy investigation during testimony; 2) the trial court erroneously admitted evidence discovered during the execution of search warrants because the State failed to establish probable cause; 3) the trial court erred by ordering evidence at a post-conviction hearing to be presented by affidavit rather than by live testimony; 4) trial counsel rendered ineffective assistance by failing to request a change of judge; 5) trial counsel was ineffective for failing to request a

5

hearing to challenge the veracity of the confidential informant; and 6) the Indiana Court of Appeals erroneously denied his request to file a second or successive petition for post-conviction relief.

### A. Procedural Default-Claims One, Two and Five

Ramsey's claims one, two and five were not fairly presented in his petitions to transfer to the Indiana Supreme Court. In recognition of federal-state comity, a petitioner seeking federal habeas relief must establish that he "fully and fairly [presented] his federal claims to the state courts . . . ." *Chambers v. McCaughtry,* 264 F.3d 732, 737 (7th Cir. 2001). Fair presentment "requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.; see also Dellinger v. Bowen,* 301 F.3d 758, 764 (7th Cir. 2002).

The Seventh Circuit has identified four factors to determine whether a claim has been fairly presented to state courts in federal constitutional terms. The factors are: "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Sweeney v. Carter,* 361 F.3d 327, 332 (7th Cir. 2004).

In Ramsey's petition for transfer following direct appeal, he states "the issue before this Court is whether the law regarding sentencing for purposes of finding a criminal defendant an habitual offender was incorrectly applied and whether the defendant suffered prejudice and a denial of his right to a fair trial due to the State's failure to provide the defendant with all relevant discovery." In Ramsey's petition for transfer following the affirmance of the partial

denial of his petition for post-conviction relief, he states "the issue before this Court is whether an evidentiary hearing should have been held on petitioner's petition for post-conviction relief. And whether there should have been a change of judge. And whether Petitioner's sentence was inappropriate in light of the nature of the offense, and the character of the offender." Thus, the factual basis of these claims and the pertinent federal constitutional challenge argued here were not placed squarely before the Indiana Supreme Court in either of Ramsey's petitions for transfer. See *Custis v. Superintendent, Indiana State Prison,* 2009 WL 2589841, *4 (N.D.Ind. 2009) (footnote omitted) (petitioner procedurally defaulted federal habeas claim where petition to transfer did not provide the Indiana Supreme Court notice of the federal habeas claim because he did not identify any federal law arguments and in doing so, "failed to submit both the operative facts and the controlling legal principles of the federal claim through one full round of state appellate review").

### B. Non-Cognizable Claims-Claims Two, Three and Six

Ramsey's challenges to the admissibility of evidence, errors at post-conviction and to the Indiana Courts denial of his request to pursue a second or successive claim are also non-cognizable.

"To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'" *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004)(quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)). First, **"**[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir. 1993). Ramsey's

claim concerning the assertedly improper admission of evidence is thus not cognizable under § 2254(a).

Second, Ramsey's challenges the trial court's decision to order post-conviction evidence to be presented via affidavit. However, errors at post-conviction do not present a cognizable basis for relief under § 2254(a). *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir.) ("[u]nless state collateral review violates some independent constitutional right, such as the Equal Protection Clause, . . . errors in state collateral review cannot form the basis for federal habeas corpus relief"), *cert. denied,* 519 U.S. 907 (1996); *Williams v. State,* 640 F.2d 140, 143-44 (8th Cir.) ("Infirmities in the state's post-conviction remedy procedure cannot serve as a basis for setting aside a valid original conviction. . . . Errors or defects in the state post-conviction proceeding do not, *ipso facto,* render a prisoner's detention unlawful or raise constitutional questions cognizable in habeas corpus proceedings."), *cert. denied,* 451 U.S. 990 (1981). The claim of error in the post-conviction proceeding is not cognizable here and thus does not warrant the habeas relief Ramsey seeks.

In addition, Ramsey's challenge to the Indiana Court of Appeals' decision not to authorize his second or successive petition is of no consequence here because such a challenge–a challenge based on state law–is not within the scope of § 2254(a). *See Del Vecchio v. Illinois Dep't. of Corr.,* 31 F.3d 1363, 1370 (7th Cir. 1994) (habeas corpus jurisdiction is limited to evaluating alleged violations of federal statutory or constitutional law); *Bloyer v. Peters,* 5 F.3d 1093, 1098 (7th Cir. 1993) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)).

### C. Ineffective Assistance of Counsel-Claim Four

Ramsey's remaining claim is that trial counsel rendered ineffective assistance by failing to request a change of judge. A defendant has a right under the Sixth Amendment to effective

assistance of counsel at trial. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Id.* For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Id.,* at 687. The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers.

With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). In determining whether counsel's performance was constitutionally deficient, the court's review of counsel's performance is highly deferential, and the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Davis v. Lambert,* 388 F.3d 1052, 1059 (7th Cir. 2004). With respect to the prejudice requirement, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

The foregoing outlines the straightforward features of *Strickland's* two-prong test. In the context of a case such as Ramsey presents, however, the AEDPA raises the bar. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal and end citations omitted).

When the AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009)(internal citations and quotations omitted).

The Indiana Court of Appeals reviewed Ramsey's ineffectiveness claim in the post-conviction appeal and noted the *Strickland* standard. *Ramsey II*, at p. 7. The Indiana Court of Appeals then explained:

> In *Beverly v. State*, 543 N.E.2d1111, 1115 (Ind. 1989), our Indiana Supreme Court held "the fact that appellant's trial judge signed his probable cause affidavit and arrest warrant does not constitute a showing of actual prejudice or bias [.]" Based on that case law, the trial court should not have granted a motion for a change of judge based on that argument. Ramsey has not indicated any other reason the judge may have been prejudiced or biased. Therefore, Ramsey has not demonstrated counsel was ineffective for declining to request a change of judge.

*Ramsey II*, at p. 8. This accords with the federal standard. *See Liteky v. United States,* 510 U.S. 540, 554 (1994); S*prinpangler v. Sears, Roebuck & Co.*, 759 F. Supp. 1327, 1329 (S.D.Ind. 1991) ("When a motion for recusal fails to set forth an extrajudicial source for the alleged bias and no such source is apparent, the motion should be denied." (Citing *Jaffree v. Wallace,* 837 F.2d 1461, 1465 (11th Cir. 1988)).

Thus, the Indiana Court of Appeals' *Strickland* analysis encompassed each prong of the proper standard. It did not do so in an unreasonable fashion and this analysis is wholly in accord with the principle that "[i]t is not deficient performance to fail to raise an argument with no real chance of success." *Hough v. Anderson,* 272 F.3d 878, 898 n.8 (7th Cir. 2001). Because "only a clear error in applying *Strickland's* standard would support a writ of habeas corpus," *Holman v.*

*Gilmore,* 126 F.3d 876, 882 (7th Cir. 1997) (citations omitted), and because no such clear errorBand no error at all--occurred in *Ramsey II,* Ramsey is not entitled to federal habeas relief based on this specification of ineffective assistance of counsel.

As the foregoing shows, the Indiana Court of Appeals in *Ramsey II* "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," Ramsey's ineffective assistance of trial counsel claim does not support the award of habeas corpus relief. *Murrell v. Frank,* 332 F.3d 1102, at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

### IV. Conclusion

Ramsey's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law"). This court has carefully reviewed the state record in light of Ramsey's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Ramsey to relief in this case. Ramsey's petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

**Certificate of Appealability**

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2254 proceedings, and 28 U.S.C. § 2253(c), the court finds that Ramsey has failed to show that reasonable jurists would find Ait debatable whether the petition states a valid claim of the denial of a constitutional right@ and Adebatable whether [this court] was correct in its procedural ruling.@ *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore **denies** a certificate of appealability.

**IT IS SO ORDERED.**

Date: 04/30/2014

*signature*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Danny Ramsey
No. 156491
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Electronically Registered Counsel